IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GALLUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> BUSINESS RESEARCH BUREAU (PVT.) LTD., d/b/a GALLUP PAKISTAN, IJAZ SHAFI GILANI, GALLUP BUSINESS RESEARCH SERVICES (PVT.) LTD., d/b/a GALLUP PAKISTAN, and GALLUP PAKISTAN (PVT.) LTD., <br><br> Defendants. | No. C 08-01577 WHA <br><br> **ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND VACATING HEARING** |

## INTRODUCTION

This civil action is but one front in a global war over the "Gallup" name. In this extraterritorial trademark dispute involving a foreign polling organization's right to publish opinion polls on the Internet under the name "Gallup Pakistan," plaintiff Gallup, Inc. moves for summary judgment and a permanent injunction against *pro se* defendant Ijaz Shafi Gilani, a resident and citizen of the Islamic Republic of Pakistan and Chairman of Gallup Pakistan, a foreign corporation that has been conducting Pakistani opinion surveys for nearly thirty years. For the reasons set forth below, the motion must be **DENIED**.

## STATEMENT

The United States trademark system is one of many in the world. Unsurprisingly, this has given rise to contentious international disputes over the right to use a particular mark across

1 multiple jurisdictions. One need only order a Budweiser in beer halls around the globe to see
2 these conflicts at work.[1]

3 In the online world, the confluence of conflicting trademark systems presents even more
4 challenging questions of jurisdiction and enforcement. Indeed, the Internet — at least as it exists
5 today — is a medium largely lacking in effective border controls. As such, information posted
6 online is often readily accessible to Internet users regardless of where it is geographically located.
7 The result is a free and largely unregulated flow of data between distant lands with different
8 systems of laws.

9 At the heart of the instant dispute is whether Gallup Pakistan — who may or may not be
10 using the "Gallup" name lawfully under Pakistan's own trademark system — may continue to
11 publish polls and surveys of the Pakistani populace on its website without violating United States
12 trademark laws. The alleged violation of United States trademark law, as argued by plaintiff
13 Gallup, Inc., occurs every time an American news outlet decides to publish poll results posted on
14 Gallup Pakistan's website and credit Gallup Pakistan as the source of the poll. According to the
15 complaint, this happened approximately eighteen times during the 2008 Pakistani parliamentary
16 elections. Gallup Pakistan, in return, receives no direct compensation from these American news
17 outlets when its polls are cited. Nevertheless, plaintiff asserts that Gallup Pakistan has "directed"
18 its polls and surveys to the United States by making the Gallup Pakistan website accessible in
19 English to the American market, and this is sufficient for trademark infringement to be found and
20 an injunction to issue.

21 With this background in place, the specific facts of the dispute are presented below.

22 **1. THE PARTIES**

23 Plaintiff Gallup, Inc. is a market research and public opinion polling company
24 incorporated under the laws of Delaware (Anderson Decl. ¶¶ 5–6, Exhs. C–E). It is the
25 undisputed owner of eleven registered United States trademarks and service marks for its family

---

[1] While Americans may know Budweiser as Anheuser-Busch's iconic "King of Beers," the Czech brewery of Budejovicky Budvar has won the rights to the Budweiser trademark in numerous foreign jurisdictions. *See* Jitka Smith, *Comment: Budweiser or Budweiser?*, 32 J. Marshall L. Rev. 1251 (1999) (summarizing the worldwide trademark dispute over the Budweiser name).

2

of GALLUP products (*id.* ¶¶ 8, 9, Exhs. F–P). Five of these marks, including the GALLUP service mark, have become incontestable under Section 1065 of the Lanham Act (*id.* ¶ 9, Exhs. F–J). *See* 15 U.S.C. 1065. Tens of millions of U.S. dollars have been spent by plaintiff to advertise and promote the GALLUP name (*id.* ¶ 12). Defendant Gilani acknowledges and does not dispute that plaintiff has the exclusive right to conduct and publish surveys in the United States under the GALLUP name (Gilani Decl. ¶ 11).

Proceeding *pro se* with the assistance of his son, Gilani is a professor at the International Islamic University, Islamabad, Pakistan, and is the Chairman and Chief Executive of Gallup Business Research Services (Pvt.) Ltd. ("GBRS") and Gallup Pakistan (Pvt.) Ltd. (*id.* ¶¶ 8, 9, 14). Additionally, Gilani is or was a director of Business Research Bureau (Pvt.) Ltd. ("BRB") (Dkt. 13 at 6). GBRS, Gallup Pakistan, and BRB were all named defendants in the amended complaint (Compl. ¶ 2).

Professor Gilani has been involved in public opinion research in Pakistan since 1980 (Gilani Decl. ¶ 10). This is the same year that Gallup Pakistan was apparently established (*see* Andersen Decl. Exh. Q). Gallup Pakistan's website, located at http://www.gallup.com.pk, is available only in English, and prominently displays a GALLUP PAKISTAN mark in the upper left hand corner of the website's navigational toolbar (*id.* ¶ 16, Exh. Q). The website also prominently displays a heading entitled "Dr. Gilani's Corner," which links to writings from Gilani in his personal capacity. One of these writings was an academic paper written by Gilani that bore the GALLUP PAKISTAN mark (*ibid.*). Since the filing of this lawsuit, a disclaimer was added to Gallup Pakistan's website disclaiming any relation to plaintiff, stating (Opp. 11; Dkt. No. 61 ¶ 12):[2]

> Disclaimer: Gallup Pakistan is not related to Gallup Inc. headquartered in Washington D.C. USA. We require that our surveys be credited fully as Gallup Pakistan (not Gallup or Gallup Poll). We disclaim any responsibility for surveys pertaining to Pakistani public opinion except those carried out by Gallup Pakistan, the Pakistani affiliate of Gallup International Association.

---

[2] This docket entry refers to the declaration of Ken Anderson filed in support of plaintiff's opposition to defendant Gilani's motion to dismiss.

3

This disclaimer, however, was purportedly not present on Gallup Pakistan's website at the time the alleged infringing acts occurred.

Both the GALLUP (left) and GALLUP PAKISTAN (right) marks are displayed below:

 

The respective websites of plaintiff (left) and defendant (right) are also displayed below:

 

### 2. THE ALLEGED INFRINGING ACTS

The complaint alleged the following infringing acts committed by defendant Gilani. *First*, Gallup Pakistan — presumably at Gilani's direction — published the results of six Pakistani public opinion polls on its website between January 11, 2008, and February 22, 2008 (Compl. ¶ 32; Dkt. No. 61 ¶ 10). According to plaintiff, the polls were "made available to the public and press" on the website and each poll "bore the mark GALLUP" (Br. 4; Dkt. No. 61 ¶ 10). Defendant disputes this characterization, and asserts that all polling and survey results produced by Gallup Pakistan bore (or were referred to with) the GALLUP PAKISTAN mark rather than the GALLUP mark (Gilani Decl. ¶ 16). These six polls were republished eighteen times in the United States by thirteen major news organizations, including The New York Times, Reuters, and
4

Time (Dkt. 61 ¶ 11, Exhs. A–R). In two of the articles cited by plaintiff, the poll results were inaccurately attributed to "Gallup" (*id.* ¶ 11, Exhs. M, N).

*Second*, Gilani admitted in his answer that he gave an interview on National Public Radio's "Morning Edition" on February 12, 2008, in which he discussed Gallup Pakistan poll results (Compl. ¶ 38; Ans. ¶ 38). The show's host, who had traveled to Islamabad to conduct the interview with Gilani, introduced defendant as head of the "Pakistani chapter of the Gallup polling organization" (*ibid.*).

*Third*, Gilani admitted in his answer that he appeared in a teleconference event for the Center for Strategic & International Studies ("CSIS") on February 15, 2008, in which he discussed Gallup Pakistan poll results (Compl. ¶ 39; Ans. ¶ 39). There is no evidence or allegation that defendant was in the United States while participating in this event. During the teleconference, which was broadcast over the Internet, Gilani was introduced as the "Chairman of Gallup Pakistan" (*ibid.*).

*Fourth*, Gilani visited the United States to give talks at the 2007 International Studies Association Convention in Chicago and the 2008 International Studies Association Congress in San Francisco (Gilani Decl. ¶¶ 14, 15). While Gilani admitted that he appeared at those events in his capacity as an academic, he denied the allegation that he discussed Gallup Pakistan or its polling results in his talks (Compl. ¶ 40-42; Ans. ¶ 40-42). The subject of the 2007 talk was Gilani's commentary on a book entitled "Anti-Americanisms in World Politics" (Gilani Decl. ¶ 14). After returning to Islamabad, Gilani then wrote and posted to the Gallup Pakistan website a paper incorporating the themes explored in his talk (Andersen Decl. ¶ 16, Exh. Q; Gilani Decl. ¶ 14). This paper bore the GALLUP PAKISTAN mark (Andersen Decl. ¶ 16, Exh. Q).

The subject of Gilani's 2008 appearance in San Francisco is less clear, but Gilani participated in a session devoted to the life and works of one of his former university professors

5

(Opp. 4; Gilani Decl. ¶ 15). It was also at this event where plaintiff's process server handed the summons and complaint to Gilani, which Gilani refused to touch (Gilani Decl. ¶ 15).[3]

*Fifth*, plaintiff asserts that Gilani was interviewed and identified as "a pollster with Gallup Pakistan" in a segment of a CNN Newsroom program on or before October 28, 2009 (Anderson Decl. ¶ 19).

### 3. GALLUP INTERNATIONAL ASSOCIATION

Gallup International Association ("GIA") is not a party to this litigation. Nevertheless, GIA is referenced numerous times throughout defendant Gilani's answer, opposition brief, and declaration in support of his opposition to summary judgment, as well as in the screenshots of the Gallup Pakistan website plaintiff included in its declaration in support of this motion (Ans. ¶¶ 2, 17, 19, 29; Opp. 1, 2, 9, 11, 16; Gilani Decl. Exh. 3; Anderson Decl. ¶ 16, Exh. Q). Indeed, the GALLUP PAKISTAN mark itself contains the phrase "Affiliated with Gallup International" (Anderson Decl. ¶ 16, Exh. Q). Plaintiff Gallup, Inc. has not mentioned *anywhere* in this dispute the existence of this separate organization.

Based upon the Gallup Pakistan website excerpts included in plaintiff's declaration, as well as information included in defendant's supporting declaration, GIA was founded in London in 1947 and offers comprehensive research in over 100 countries worldwide via its network of member companies (Anderson Decl. ¶ 16, Exh. Q; Gilani Decl. Exh. 3) Gallup Pakistan is apparently an affiliate — or one of the "member companies" — of GIA (*ibid.*; Opp. 1, 2). Additionally, there are apparently many other members of GIA in countries other than Pakistan who are using the "Gallup" name, including Gallup Korea, Capacent Gallup in Iceland, and CID Gallup in Latin America, among others (Gilani Decl. Exh. 3).

Of course, whether GIA or other member companies across the world are involved in parallel litigation with plaintiff has not been presented by any sworn evidence before the Court,

---

[3] Gilani was apparently unaware that this lawsuit had been filed against him until a law firm in San Francisco, with whom Gilani had no prior dealings, contacted him in Pakistan and notified him of these proceedings (Dkt. No. 13 at 1–2). The law firm agreed to contact plaintiff's counsel on Gilani's behalf to seek an extension of time to file an answer (*id.* at 2; Dkt. No. 11 ¶¶ 5–7). Gilani, however, did not have sufficient the funds to retain the law firm, and therefore has proceeded *pro se* in his defense.

6

nor is it relevant to the determination of infringement in the United States.[4] That said, it is worth noting — for the sake of narrative background — that GIA was allegedly founded by the same Dr. George H. Gallup that founded plaintiff's company, Gallup, Inc. (Opp. 1; Anderson Decl. ¶¶ 1–5). Additionally, Gallup, Inc. was allegedly a former member of GIA until sometime in the 1990's (Opp. 2).

After leaving GIA, plaintiff has allegedly been involved in ongoing trademark disputes with GIA affiliates in various jurisdictions across the world (Opp. 3).

\* \* \*

Plaintiff filed this action against defendants Gilani and BRB on March 24, 2008, amending its complaint on August 22, 2008, to add defendants GBRS and Gallup Pakistan (Dkt. Nos. 1, 47). Gallup Pakistan, GBRS, and BRB failed to answer, eventually resulting in an entry of default against each (Dkt. Nos. 15, 66, 71).[5] Upon plaintiff's motion, the undersigned entered default judgment against these three entities on April 3, 2009 (Dkt. Nos. 88, 89). Defendant Gilani, however, filed a timely answer *pro se*, wherein he appeared to raise the defenses of insufficient service of process, lack of personal jurisdiction, and lack of subject-matter jurisdiction (Dkt. No. 13). At the telephonic case management conference held on August 21, 2008, the undersigned set a deadline of September 25, 2008, for defendant to file any Rule 12 motion, noting that personal jurisdiction was "the first order of business to decide" (Dkt. No. 45). Defendant, however, filed a motion to dismiss the complaint for lack of *subject-matter* jurisdiction, and did not challenge personal jurisdiction in his motion (Dkt. Nos. 54). The motion was denied, as the undersigned determined that the complaint alleged sufficient acts *within* the United States to warrant the exercise of subject-matter jurisdiction (Dkt. No. 68). Defendant Gilani then filed an answer to plaintiff's amended complaint, wherein he again asserted

---

[4] The existence of GIA and other "Gallup"-branded GIA affiliates, however, is *certainly* relevant to whether defendant Gilani was operating Gallup Pakistan with the intent to violate plaintiff's trademark rights in the United States or as merely one of numerous member companies of a long-established international association.

[5] Defendant Gilani attempted to answer on behalf of BRB, but since Gilani was (and is) not a lawyer, he was not allowed to represent BRB under Civil Local Rule 3-9(b) (Dkt. No. 14). As such, since corporations cannot represent themselves *pro se*, default was entered against BRB, as well as the other corporate defendants in this action.

7

insufficient service of process, lack of personal jurisdiction, and lack of subject-matter jurisdiction (Dkt. No. 86).

Plaintiff now moves for summary judgment on all but one of its claims against Gilani.

**ANALYSIS**

The amended complaint alleged five claims for relief under federal and state law: (1) federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. 1114–1117; (2) federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a); (3) federal dilution of famous marks under Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c); (4) California unfair competition under Cal. Bus. & Prof. Code § 17200; and (5) common law unjust enrichment (Compl. ¶¶ 54–69).

In its motion, plaintiff asked the Court to voluntarily dismiss its fifth claim for unjust enrichment, and indicated that it was no longer seeking damages against defendant Gilani (Br. 2).[6] Additionally, plaintiff sought to enjoin defendant from the following activities:

> 1. Using, in connection with the promotion, advertising, offering, or sale of any opinion poll, survey, or consulting services in the United States, the GALLUP Marks or any other designation that is confusingly similar to or likely to cause confusion with any of the GALLUP Marks, or any other designation that dilutes or is likely to dilute the GALLUP Marks.
>
> 2. Operating a website that is in English and is accessible to persons within the United States under the internet domain name, gallup.com.pk, or any other internet domain name that is confusingly similar to Gallup's website address of www.gallup.com.
>
> 3. Otherwise competing unfairly with Gallup in any manner including (1) adopting or infringing upon the GALLUP Marks and (2) adopting or using other marks or designations that are confusingly similar to the GALLUP Marks.
>
> 4. Conspiring with, aiding, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

---

[6] Plaintiff's request to voluntarily dismiss its unjust enrichment claim is **GRANTED**.

Whether plaintiff is entitled to summary judgment on its first four claims, however, must yield to a separate inquiry, as issues of comity and extraterritorial jurisdiction have grown evident in light of the factual record presently before the Court.

Subject-matter jurisdiction may be raised *sua sponte* by a court at any time during the pendency of an action. *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). While the undersigned preliminarily addressed the issue of subject-matter jurisdiction when raised by defendant Gilani in his motion to dismiss, that order — filed on November 10, 2008 — relied solely upon the facts as alleged by plaintiff in its complaint, and did not address *extraterritorial* jurisdiction (Dkt. No. 68). Plaintiff, however, can no longer rely upon mere allegations. Given the evidence now presented by both parties, this order finds that jurisdiction must be revisited.

A recap of the prior order on this matter is instructive. The November 10 order found that plaintiff had *alleged* sufficient violations of the Lanham Act within the United States to justify the exercise of subject-matter jurisdiction. Specifically, the order noted that the Lanham Act provided a "broad jurisdictional grant" extending to "all commerce which may lawfully be regulated by Congress." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283–284 (1952). The Ninth Circuit then expanded the scope of jurisdiction to any activity that could "have an adverse effect on that commerce." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 427 (9th Cir. 1977). With respect to foreign commerce, the Ninth Circuit noted that only "some effect" on American commerce was necessary for subject-matter jurisdiction to lie. *Id.* at 428.

Given this broad jurisdictional grant, the November 10 order found that the complaint met this low threshold for subject-matter jurisdiction under the Lanham Act with respect to the alleged infringing activities. Specifically, the undersigned determined that under *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007), defendant Gilani's website, transmitted worldwide over the Internet, fell within the scope of commerce lawfully regulated by Congress because the Internet has been deemed an "instrumentality and channel of interstate commerce."[7]

---

[7] It should be noted that while operating a website on the Internet is apparently sufficient to place oneself within the ambit of interstate commerce, it is *not* alone sufficient for personal jurisdiction to be found. *See, e.g.*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) (declining to exercise personal jurisdiction over a Florida defendant even

9

Additionally, the November 10 order determined that defendant's use of the alleged infringing mark to identify the source of polls, surveys, and academic papers was a "use in commerce . . . of a registered mark in connection with the . . . distribution . . . of goods," and was therefore actionable under 15 U.S.C. 1114. Finally, because the complaint alleged that each of Gilani's alleged infringing acts had "some effect" on American commerce, under *Wells Fargo*, this was sufficient to confer subject-matter jurisdiction under the Lanham Act.

With a more developed record, however, it is clear that the inquiry must proceed further. This is because the jurisdictional test applied in the November 10 order did not include a critical limitation set forth by the Ninth Circuit pertaining to the Lanham Act's reach over extraterritorial activities. Indeed, without this limitation, the jurisdictional rules set forth above in *Bulova*, *Wells Fargo*, *Sutcliffe*, and 15 U.S.C. 1114, lead to the overbroad and improper conclusion that subject-matter jurisdiction is proper over *any* website accessible to users in the United States over the Internet. In other words, under the incomplete analysis performed in the November 10 order, even if a website was being operated by a legitimate organization beyond the geographic borders of the United States, and used a trademark that was valid in the foreign jurisdiction's trademark system, it would nonetheless fall under the subject-matter jurisdiction of the Lanham Act, and an infringement action would lie.

This very situation presents itself here. The evidence now before the Court indicates that defendant Gilani is a citizen and resident of Pakistan, has no business connections with the United States, and Gallup Pakistan — the organization he founded and has operated for nearly thirty years — conducts public opinion polls solely within the country of Pakistan and does not sell or advertise services in the United States. Given these facts, it is clear that the relief sought by plaintiff would require the Court to exercise authority over activities that are wholly extraterritorial and not directed to the United States (Gilani Decl. ¶¶ 1–10).

The Ninth Circuit's limitation on extraterritorial jurisdiction under the Lanham Act, as set forth in *Wells Fargo*, requires the application of the three-factor test set forth in *Timberlane*

though its website was accessible in Arizona, the state where plaintiff held valid trademark rights). As the November 10 order expressly noted, however, defendant Gilani did not challenge personal jurisdiction in his motion to dismiss.

1  *Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir.1976).
2  *Wells Fargo*, 556 F.2d at 427–28. While the November 10 order declined to engage in a
3  *Timberlane* analysis, it is now clear that its application is necessary.[8] Under *Timberlane*, the
4  court must consider three factors when deciding to extend the Lanham Act's jurisdictional reach
5  over extraterritorial activities: (1) there must be "some effect" on American foreign commerce,
6  (2) the effect must be sufficiently great to present a cognizable injury to plaintiffs under the
7  federal statute, and (3) the interests of and links to American foreign commerce must be
8  sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial
9  authority. *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir. 1985).

The application of *Timberlane* to this case raises troubling concerns. While there is no question that plaintiff has put forth evidence that defendant's activities in releasing poll results on the Gallup Pakistan website have had "some effect" on its trademark rights in the United States, there is little evidence on the record to find that defendant's extraterritorial activities have inflicted or will inflict a cognizable injury upon plaintiff in the United States. Indeed, while plaintiff presented evidence of six polls conducted by defendant during a six-week period in 2008 surrounding the Pakistani parliamentary elections, and showed that these polls were published by eighteen news organizations in the United States bearing either the GALLUP or GALLUP PAKISTAN mark, there is little else to justify the imposition of the *severe* equitable relief sought in its motion. All plaintiff has shown is that defendant Gilani, who has presumably conducted hundreds if not thousands of polls in Pakistan since 1980, conducted *six* polls in his home country that were deemed newsworthy by American news outlets.

Additionally, the record presents troubling issues of comity. When examining the last factor under *Timberlane*, the court considers:

---

[8] One of the reasons a *Timberlane* analysis was not conducted in the November 10 order was due to plaintiff's assertion that "[i]f Gallup has requested any relief that seeks to reach beyond defendants' activities conducted in and/or directed at the United States, such requests were inadvertent and are hereby withdrawn" (Dkt. No. 60 at 17). Gallup, however, failed to produce *any* competent evidence that Gilani's overseas activities were "conducted in" or "directed at" the United States. As such, the activities plaintiff seeks to enjoin now appear wholly extraterritorial.

11

> [T]he degree of conflict with foreign law or policy, the nationality or allegiance of the parties and the locations or principal places of business of corporations, the extent to which enforcement by either state can be expected to achieve compliance, the relative significance of effects on the United States as compared with those elsewhere, the extent to which there is explicit purpose to harm or affect American commerce, the foreseeability of such effect, and the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Timberlane*, 549 F.2d at 614. Here, both plaintiff and defendant are in the process of establishing their rights to the GALLUP mark within Pakistan's own trademark system (Gilani Decl. ¶ 12; Compl. ¶¶ 24–28). If plaintiff were to be successful in this endeavor, the relief sought by this motion would be unnecessary, as plaintiff could use the full force of Pakistan's trademark laws to enjoin defendant's allegedly infringing activities in that country. On the other hand, if defendant were to prevail in registering his trademark in Pakistan, granting plaintiff's equitable relief in this action would significantly interfere with defendant's right to use the GALLUP PAKISTAN mark lawfully in Pakistan. In sum, there is a *substantial* risk of conflict with foreign law, as the parties' trademark rights in Pakistan are being disputed contemporaneously with this action. *See Star-Kist*, 769 F.2d at 1396 (declining to apply the Lanham Act to wholly foreign Philippine commerce because it would create a conflict with Philippine trademark law, given the fact that trademark proceedings were pending in that country).

Additionally, unlike in *Bulova*, *Wells Fargo*, and *Star-Kist*, defendant Gilani has no ties to the United States — he is not a United States citizen and has *no business presence* in this country. *See Bulova*, 344 U.S. at 285–86 (alleged infringer Steele was an American citizen who imported watch parts from the United States into Mexico); *Wells Fargo*, 556 F.2d at 411 (foreign defendants owned subsidiaries within the United States); *Star-Kist*, 769 F.2d at 1394 (both parties were California corporations). Additionally, the evidence supports a finding that the alleged infringing polls and surveys published by defendant Gilani on the Gallup Pakistan website had no ties to the United States other than (1) being in English and accessible over the Internet, and (2) being, on six occasions, of international interest such that American news outlets cited to them.

Also troubling under the third *Timberlane* factor is whether the Court can even enforce compliance of plaintiff's requested relief with respect to defendant's extraterritorial activities.

Indeed, the relief sought by plaintiff would require defendant Gilani to transfer his website to a new domain name, publish his polls in a language other than English, or block all access to his website from the United States.[9] Given that both defendant and his website appear to be located in Pakistan, it is unclear how such relief could be enforced. Moreover, if plaintiff's requested relief was granted, defendant would also be enjoined from using the GALLUP or GALLUP PAKISTAN mark for any opinion poll or survey that could be potentially accessed and published by American news outlets. Given the borderless nature of Internet communications, it is difficult to imagine how defendant Gilani could accomplish this without significant capital investments or abandoning the GALLUP PAKISTAN name entirely.

Since only *six* of presumably thousands of Gallup Pakistan surveys have been of sufficient international interest to be selected for publication by American news outlets, the relief requested by plaintiff seems plainly unfair. It would essentially shut down a foreign company that has been taking polls and surveys of the Pakistani public for over thirty years as a longstanding member of GIA, which was apparently founded by the very George H. Gallup that founded Gallup, Inc. This decades-long membership of Gallup Pakistan in GIA strongly suggests that Gilani did not (and does not) intend to harm American commerce or plaintiff's mark in the United States by operating the Gallup Pakistan website.

Finally, the effect on United States commerce from the allegedly infringing uses of the GALLUP mark by defendant in operating Gallup Pakistan is insignificant compared to the effect on Pakistani commerce. *See Star-Kist*, 769 F.2d at 1396 (noting a similar imbalance before affirming the district court's exclusion of wholly foreign commerce from the Lanham Act). Here, plaintiff has only shown that *six* out of potentially thousands of polls conducted by Gallup Pakistan over the past thirty years found their way into American news publications. As such, this order finds that the effect of defendant's conduct on the commerce of Pakistan greatly outweighs any incidental effect defendant's activities may have had on United States commerce.

---

[9] Although asserted by defendant in his unsworn brief, it is noted that English is allegedly the *de facto* official language of Pakistan, and also the language in which most Pakistanis access the Internet (Opp. 10).

13

The *Timberlane* analysis is a "jurisdictional rule of reason" of comity and fairness. *Wells Fargo*, 556 F.2d at 428. The record as it stands, giving full consideration to these principles, does *not* support the extension of extraterritorial jurisdiction under the Lanham Act to defendant Gilani's wholly foreign activities. Significantly, plaintiff has not provided competent evidence of any "purpose to harm or affect American commerce" on behalf of defendant. *Timberlane*, 549 F.2d at 614. Indeed, Plaintiff's only argument on this point is that because defendant Gilani's website is "maintained in English and is accessible in the United States," it should fall within the scope of the Lanham Act's extraterritorial jurisdiction. This is tantamount to saying that *any* website maintained in English could be deemed infringing, because if it is in English, Americans *might* be interested in reading it or citing to it. This is insufficient, unpersuasive, and unfair in light of the considerations set forth in *Timberlane*.

The above analysis applies with equal force over defendant Gilani's interview with NPR on February 12, 2008, teleconference participation on February 15, 2008, and interview with CNN on October 28, 2009. Gilani was *not* alleged to have been within the United States for any of these events. With respect to the February 15 teleconference, Gilani's affiliation with Gallup Pakistan was accurately reported as being "Chairman of Gallup Pakistan." As for the NPR interview, the host of Morning Edition, Jackie Northam, ambiguously credited defendant Gilani as "head[ing] up the Pakistani chapter of the Gallup polling organization."[10] On CNN, Gilani was identified as "a pollster with Gallup Pakistan." While all of these events were presumably broadcast to (or were available for viewing within) the United States, the same concerns under *Timberlane* persist. Indeed, plaintiff essentially asks the Court to hold that mere participation in an international teleconference or news program broadcast to the United States (or available for viewing in the United States via the Internet) is sufficient to subject the holder of a presumably

---

[10] Plaintiff is quick to assume that this indicates Ms. Northam's confusion over whether Gallup Pakistan was affiliated with Gallup, Inc. However, given that Gallup Pakistan has been affiliated with Gallup International Association for decades, it can be equally inferred that Ms. Northam was confused as to whether Gallup International Association was Gallup, Inc. Indeed, Gilani's answer asserts that Ms. Northam simply erred in referring to Gallup International Association (Ans. ¶ 38).

14

valid *foreign* trademark to infringement liability under the Lanham Act. The principles of comity and fairness weigh strongly against this argument.

Finally, while the two appearances made by defendant Gilani within the United States in 2007 and 2008 clearly fall within the jurisdiction of the Lanham Act, plaintiff has not presented *any* evidence that Gilani's appearances involved the use of the GALLUP or GALLUP PAKISTAN mark. Plaintiff can only point to a publication bearing the GALLUP PAKISTAN logo that was written and posted on the Gallup Pakistan website *after* Gilani had returned to Islamabad following his appearance at the 2007 International Studies Association Convention in Chicago (Br. 10). For the same reasons discussed above, fairness and comity do not support extending the Lanham Act over this wholly extraterritorial act.[11]

In sum, plaintiff has failed to produce competent evidence that defendant conducted any activities within the United States in violation of the Lanham Act. Additionally, the jurisdictional facts before the Court do not, under *Timberlane*, support the extension of the Lanham Act over defendant's alleged infringing activities overseas. These activities occurred in wholly foreign commerce, and any effects they had on United States commerce — based upon the record before the undersigned — were incidental and insignificant. *Star-Kist*, 769 F.2d at 1396. As such, the Court declines to extend the Lanham Act to defendant's extraterritorial activities, and therefore declines to authorize the equitable relief sought by plaintiff.[12]

## CONCLUSION

For the reasons set forth in this order, plaintiff's motion for summary judgment is **DENIED.** The hearing on this motion scheduled for February 18, 2010, is **VACATED**.

---

[11] To be clear, the only allegedly infringing acts committed *within* the United States are Gilani's appearances in Chicago and San Francisco. Plaintiff argues that Gilani's placement of polls on the Gallup Pakistan website should also be considered acts of infringement *within* the United States. This argument is unpersuasive. The publishing of polls on the Gallup Pakistan website is a *separate* act from the re-publishing of polls by news outlets in the United States. With respect to the latter act, plaintiff has not put forth any theory or evidence as to why Gilani should be held liable under the Lanham Act for the independent decisions and actions of American news media.

[12] This extends further to plaintiff's remaining state law claim of unfair competition, since it is predicated upon defendant's alleged violations of the Lanham Act (Compl. ¶¶ 66–69). Since this order finds that no violations have been shown (or the acts are simply beyond the reach of the Lanham Act), the state law claim must fail.

15

Plaintiff is **ORDERED TO SHOW CAUSE** by **NOON ON THURSDAY, FEBRUARY 25, 2010**, why this action should not be dismissed for the reasons discussed herein.[13] Additionally, plaintiff is ordered to address why the Court's prior judgments against Gallup Pakistan, GBRS, and BRB, should not be vacated on the same grounds.

Plaintiff is cautioned to *not* simply rehash the arguments made in opposition to defendant Gilani's prior motion to dismiss, but focus on the critical issues raised in this order, including: (1) why, under the third factor of *Timberlane*, the undersigned should interfere with the affairs of an entirely foreign entity and the trademark laws of Pakistan when both parties are trying to establish trademark rights under Pakistani law; (2) why maintaining a foreign website in English, accessible to the United States, and containing information that may be of international interest should be deemed infringing activity "directed to" the United States; (3) whether Gallup Pakistan's decades-long membership in GIA demonstrates that defendant had no intent to harm plaintiff's mark in the United States; and (4) the implications of holding a foreign entity with a presumably valid *foreign* trademark liable for trademark infringement under the Lanham Act when the foreign trademark is cited, properly or improperly, by the American press.

**IT IS SO ORDERED.**

Dated: February 11, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[13] Pending plaintiff's response, the ruling in this order will remain tentative.

16